UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-20282-CR-UNGARO

MAGISTRATE JUDGE
O'SULLIVAN

18 U.S.C. § 371
18 U.S.C. § 287
42 U.S.C. § 1320a-7b(b)(1)
18 U.S.C. § 1349
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

DOMINGO SANTANA
and AIDA LOPEZ,

Defendants.
_____/

FILED by _____ D.C.
MAG. SEC.

APR 19 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • MIAMI

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment,

1.      The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). Medicare was a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      "Part B" of the Medicare program, covered certain durable medical equipment ("DME"), such as nebulizers and oxygen concentrators, and aerosol medications that were

utilized with DME.

3. Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

4. Various entities were under contract to provide services to CMS. Medicare Part B was administered in Florida by Palmetto Government Benefits Administrator ("Palmetto GBA"), which, pursuant to contract with the United States Department of Health of Human Services, served as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or suppliers of health care items and services, including DME and aerosol medications.

5. Pharmacies, DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." In the application, the provider acknowledged that to be able to participate in the Medicare program, the provider must comply with all Medicare related laws and regulations. A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6. After obtaining a provider number, the DME company or pharmacy then submitted or caused the submission of claims to an entity that processed those claims for CMS. For example, in Florida, claims for Part B services by a DME company or pharmacy were submitted to Palmetto GBA.

7. In order to bill the Medicare Program for services rendered, DME companies, pharmacies, and other health care providers submitted a claims form, Form 1500, to Palmetto GBA. When a Form 1500 was submitted, usually in electronic form, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare Program.

8. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the equipment or medicine provided to the beneficiary, the date the equipment or medicine was provided, the cost of the equipment or medicine, and the name and provider identification number (PIN) of the physician who prescribed or ordered the equipment or medicine.

9. As a general rule, Medicare Part B would cover aerosol medications that were taken through the use of a piece of durable medical equipment. Such services were paid for by Medicare Part B if, among other requirements, they were medically necessary and ordered by a physician.

10. Defendant **DOMINGO SANTANA** a resident of Miami-Dade County, Florida, operated and was the owner of Future Medical Equipment, Inc ("Future Medical").

11. Defendant **AIDA LOPEZ** a resident of Miami-Dade County, Florida, operated and was the owner of J & A Medical Equipment, Inc ("J&A Medical").

12. Future Medical was a Florida corporation, doing business at 11398 W Flagler Street, Suite #206, in Miami, Florida. J&A Medical was a Florida corporation, doing business at 11398 W Flagler Street, Suite #205, in Miami, Florida. Among other things, Future Medical and J&A Medical provided respiratory and other durable medical equipment ("DME") to

Medicare beneficiaries.

13. Henry Gonzalez, Karla Gonzalez, and Alfonso Rodriguez were the owners of Lily's Equipment & Supplies, Inc. ("Lily's").

14. Lily's was a Florida corporation that, among other things, operated as licensed pharmacy. Lily's was an authorized Medicare provider that was permitted to submit claims to Medicare in order to be reimbursed for the cost of health care services provided to Medicare beneficiaries, including the dispensing of aerosol medications.

## COUNT 1

### Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1. Paragraphs 1 through 14 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. From in or around February 2001, the exact date being unknown to the Grand Jury, through June 10, 2003, in Miami-Dade County, in the Southern District of Florida, the defendants,

**DOMINGO SANTANA
and AIDA LOPEZ,**

did willfully, that is, with the specific intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury to commit certain offenses against the United States, that is,

    a. to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the

United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b. to violate Title 18, United States Code, Section 287 (commonly referred to as "the False Claims Statute") in that the defendant did knowingly and willfully cause to be made, presented and filed, false, fraudulent and fictitious claims upon the United States Department of Health and Human Services, a department and agency of the United States, for purportedly medically necessary aerosol medications; and

c. to violate Title 42, United States Code, Section 1320a-7b(b)(1) by knowingly and willfully soliciting and receiving any remuneration, specifically, cash kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring an individual for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by Medicare.

### Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendants to unlawfully enrich themselves by, among other things: (a) receiving kickbacks for referring Medicare beneficiaries to Lily's so that the pharmacy could obtain reimbursement from Medicare for "compounded" aerosol medication, when, in truth and in fact, the aerosol medications were not medically necessary or reasonable; and (b) causing the filing of false and fraudulent claims for

"compounded" aerosol medications with the Medicare program.

## Manner and Means

The manner and means by which the defendants and the co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4. Defendant **DOMINGO SANTANA** established, acquired and gained control over Future Medical in or around 1995 in Miami-Dade County, Florida. Defendant **AIDA LOPEZ** established, acquired and gained control over J&A Medical in or around 1995 in Miami-Dade County, Florida.

5. Defendants **DOMINGO SANTANA** and **AIDA LOPEZ** established relationships with Medicare beneficiaries for the purpose of obtaining their Medicare cards and personal information.

6. Defendants **DOMINGO SANTANA** and **AIDA LOPEZ** established a relationship with the owners of Lily's whereby defendants **DOMINGO SANTANA** and **AIDA LOPEZ** could refer Medicare beneficiaries to Lily's for aerosol medications.

7. The relationship between defendants **DOMINGO SANTANA** and **AIDA LOPEZ** and the owners of Lily's Pharmacy was formed for the purpose of the pharmacy submitting fraudulent claims to the Medicare program for aerosol medications.

8. The owners of Lily's provided defendants **DOMINGO SANTANA** and **AIDA LOPEZ** with a list of aerosol medications that could be billed to the Medicare Program if a physician prescribed aerosol medication that required "compounding."

9. In order to "compound," the mixing and making of aerosol medications by a pharmacist, a licensed physician was required to prescribe a quantity and concentration of aerosol medication that was not commercially available.

10. Defendants **DOMINGO SANTANA** and **AIDA LOPEZ** obtained prescriptions for non-commercially available quantities and concentrations of aerosol medications for the beneficiaries.

11. Because defendants **DOMINGO SANTANA** and **AIDA LOPEZ** could not submit claims to Medicare for aerosol prescriptions, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** would refer these prescriptions that called for "compounded" aerosols to Lily's in exchange for a kickback of approximately fifty percent (50%) of the Medicare payments to Lily's for each prescription.

12. The owners of Lily's kept track of defendants **DOMINGO SANTANA** and **AIDA LOPEZ** by assigning "group numbers" to defendants **DOMINGO SANTANA** and **AIDA LOPEZ** which were included on the claims to Medicare.

13. Defendants **DOMINGO SANTANA** and **AIDA LOPEZ** were assigned group numbers 47 and 48, respectively, for those beneficiaries that were referred to the pharmacy.

14. Defendants **DOMINGO SANTANA's** and **AIDA LOPEZ's** referral of beneficiaries caused Lily's to file and submit false and fraudulent claims to the Medicare program.

15. For aerosol medication purportedly provided by Lily's to beneficiaries referred by defendants **DOMINGO SANTANA** and **AIDA LOPEZ** between February 2001 and June 2003, Medicare paid Lily's approximately $467,864. Pursuant to their agreement, Lily's paid

kickbacks of approximately $233,931 to defendants **DOMINGO SANTANA** and **AIDA LOPEZ**.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its purpose and object, at least one of the conspirators committed, or caused to be committed, in Miami-Dade County, in the Southern District of Florida, the following overt acts, among others:

1. On or about June 12, 2001, defendant **DOMINGO SANTANA** caused to be filed an annual report with the State of Florida listing himself and defendant **AIDA LOPEZ** as the only officers and directors of Future Medical.

2. On or about May 9, 2002, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** tendered prescriptions for beneficiaries F.A., and P.A. to Lily's.

3. In or around July 2002, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** received a cash kickback in the approximate amount of $6,600.

4. In or around September 2002, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** received a cash kickback in the approximate amount of $2,700.

5. In or around October 2002, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** received a cash kickback in the approximate amount of $3,400.

6. In or around December 2002, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** received a cash kickback in the approximate amount of $12,900.

7. On or about October 26, 2001, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** tendered a prescription for beneficiary N.F. to Lily's, which caused Lily's to file a claim for beneficiary N.F. with Palmetto GBA for medically unnecessary aerosol medication.

8. On or about July 9, 2002, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** tendered a prescription for beneficiary R.S. to Lily's, which caused Lily's to file a claim for beneficiary R.S. with Palmetto GBA for medically unnecessary aerosol medication.

9. On or about March 18, 2003, defendants **DOMINGO SANTANA** and **AIDA LOPEZ** tendered a prescription for beneficiary M.A. to Lily's, which caused Lily's to file a claim for beneficiary M.A. with Palmetto GBA for medically unnecessary aerosol medication.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1. Paragraphs 1 through 14 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or around February 2001, and continuing through on or around June 10, 2003, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**DOMINGO SANTANA**
**and AIDA LOPEZ,**

did willfully, that is, with the specific intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property

owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) receiving kickbacks for referring Medicare beneficiaries to Lily's so that those pharmacies could obtain reimbursement from Medicare for "compounded" aerosol medication, when, in truth and in fact, the aerosol medications were not medical necessary or reasonable; and (b) causing the filing of false and fraudulent claims for "compounded" aerosol medications with the Medicare program.

### Manner and Means

4. The allegations in Paragraphs 4 through 15 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated as though fully set forth herein.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 3-6

**Soliciting and Receiving Kickbacks Involving a Federal Health Care Program
(42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2)**

1. Paragraphs 1 through 14 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, the defendants,

**DOMINGO SANTANA
and AIDA LOPEZ,**

did knowingly and willfully solicit and receive remuneration, specifically, cash kickbacks, directly and indirectly, overtly and covertly, in return for referring an individual for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by Medicare:

| Count | Approximate Date | Defendant | Remuneration | Pharmacy |
|---|---|---|---|---|
| 3 | 07/18/2002 | **DOMINGO SANTANA and AIDA LOPEZ** | Cash kickback in the approximate amount of $6,600 | Lily's |
| 4 | 09/16/2002 | **DOMINGO SANTANA and AIDA LOPEZ** | Cash kickback in the approximate amount of $2,700 | Lily's |
| 5 | 10/31/2002 | **DOMINGO SANTANA and AIDA LOPEZ** | Cash kickback in the approximate amount of $3,400 | Lily's |
| 6 | 12/13/2002 | **DOMINGO SANTANA and AIDA LOPEZ** | Cash kickback in the approximate amount of $12,900 | Lily's |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1), and Title 18, United States Code, Section 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1. The allegations contained in Counts 1 and 2 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2. Upon conviction of any violation of Title 18, United States Code, Section 287 or a conspiracy to commit same or upon conviction of any violation of Title 18, United States Code, Section 1347 or a conspiracy to commit same, the defendant shall forfeit to the United States all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense of conviction, pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property which is subject to forfeiture, includes but is not limited to the following:

   (A) a money judgment in the amount of $467,864, which represents the gross proceeds of the fraud.

4. Pursuant to Title 21 United States Code, Section 853(p), as incorporated by reference by Title 18, United States Code, Section 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

   (A) cannot be located upon the exercise of due diligence;

 (B) has been transferred, or sold to, or deposited with a third party;

 (C) has been placed beyond the jurisdiction of the Court;

 (D) has been substantially diminished in value; or

 (E) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendant up to the value of the above-described forfeitable properties, including, but not limited, any identifiable property in the name of defendants **DOMINGO SANTANA** and **AIDA LOPEZ.**

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

KIRK OGROSKY
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

AIDA LOPEZ and
DOMINGO SANTANA,
               Defendants.
_____/

CASE NO. 07-20282-CR-UNGARO

CERTIFICATE OF TRIAL ATTORNEY*

Superseding Case Information:

**Court Division**: (Select One)

- **X** Miami ___ Key West
- ___ FTL ___ WPB ___ FTP

New Defendant(s)    Yes ___    No ___
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    Yes
   List language and/or dialect    Spanish

4. This case will take __3__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)          (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | X | Petty | ___ |
   | II | 6 to 10 days | ___ | Minor | ___ |
   | III | 11 to 20 days | ___ | Misdem. | ___ |
   | IV | 21 to 60 days | ___ | Felony | X |
   | V | 61 days and over | | | |

6. Has this case been previously filed in this District Court? (Yes or No)    No
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of    Not Applicable
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003? ___ Yes __x__ No

8. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 1999? ___ Yes __x__ No
   If yes, was it pending in the Central Region? ___ Yes ___ No

9. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes __X__ No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003? ___ Yes __X__ No

_____
KIRK OGROSKY
Deputy Chief, Fraud Section, U.S. Department of Justice
Court Identification Number A5500470

*Penalty Sheet(s) attached

REV.1/14/04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** AIDA LOPEZ

**Case No:** _____

Count #: 1

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five years' imprisonment

Count #: 2

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:** Ten years' imprisonment

Counts #: 3 - 6

Soliciting and Receiving Kickbacks Involving a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(1)

**\*Max. Penalty:** Five years' imprisonment


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **DOMINGO SANTANA**

Case No: _____

Count #: 1

   Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to

   Receive Health Care Kickbacks

   Title 18, United States Code, Section 371

*Max. Penalty: Five years' imprisonment

Count #: 2

   Conspiracy to Commit Health Care Fraud

   Title 18, United States Code, Section 1349

*Max. Penalty: Ten years' imprisonment

Counts #: 3 - 6

   Soliciting and Receiving Kickbacks Involving a Federal Health Care Program

   Title 42, United States Code, Section 1320a-7b(b)(1)

*Max. Penalty: Five years' imprisonment


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**